UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.  Case No. 2:08-cr-54
 HON. R. ALLAN EDGAR

THERESA MARIE FINFROCK,
a/k/a THERESA MARIE BERTRAND

_____/

**MEMORANDUM AND ORDER**

The federal grand jury returned a three-count indictment against defendant Theresa Marie Finfrock a/k/a Theresa Marie Bertrand. The criminal charges arise out of the death of her seven-year old son, Daniel Finfrock, who died from head trauma on January 8, 2005.

Count 1 of the indictment charges that on or about January 6, 2005, the defendant, upon a sudden quarrel and in the heat of passion, killed Daniel Finfrock by shoving and shaking him in violation of 18 U.S.C. §§ 1112, 1153, and 1151 (voluntary manslaughter). Count 2 charges that on or about January 6, 2005, the defendant assaulted Daniel Finfrock and the assault resulted in serious bodily injury to Daniel Finfrock in violation of 18 U.S.C. §§ 113(a)(6), 113(b)(2), 1365(h)(3), 1153, and 1151. Count 3 charges that in or about January 2005, the defendant knowingly and willfully made materially false, fictitious, or fraudulent statements or representations in violation of 18 U.S.C. § 1001(a)(2).

Defendant moves to suppress certain oral statements she made to Federal Bureau of Investigation (FBI) agents during two interviews on July 7, 2005, and March 6, 2008, when she was not under arrest. [Doc. Nos. 21, 26]. The July 7, 2005, interview occurred at the Michigan State Police Post in Sault Ste. Marie, Michigan, when the defendant voluntarily agreed and consented to

take a polygraph examination. The March 6, 2008, interview occurred in Kincheloe, Michigan, when the defendant voluntarily agreed and consented to be interviewed by two FBI agents while seated inside an FBI automobile. The specific statements the defendant seeks to suppress are set forth in a stipulation. [Doc. No. 34]. The defendant's main argument is that the two interviews were conducted by the FBI agents in a coercive manner and her incriminating statements were involuntary.

Magistrate Judge Timothy P. Greeley held a suppression hearing on October 8, 2009. Defendant did not testify and she did not call any witnesses at the suppression hearing. The government presented testimony from three witnesses: FBI Special Agent Paul Cowley, former FBI Special Agent James Hoppe, and Tribal Victim Advocate Patricia Allard.

On October 30, 2009, Magistrate Judge Greeley submitted a report and recommendation. [Doc. No. 35]. It is recommended that the motions to suppress be denied. The Magistrate Judge finds there is no evidence in the record showing that the FBI interviews of the defendant on July 7, 2005, and March 6, 2008, were conducted in a coercive manner. The evidence presented at the suppression hearing establishes that the two interviews were conducted in a professional, non-coercive manner by the FBI agents and the defendant's statements were voluntary.

Defendant Finfrock objects to the report and recommendation. The government has filed a response in opposition. [Doc. No. 42]. After reviewing the entire record *de novo*, the Court concludes that the defendant's objections [Doc. No. 36] are without merit. The Court agrees with and adopts the report and recommendation. The motions to suppress evidence [Doc. Nos. 21, 26] will be denied. The Court finds that the FBI Agents did not coerce the defendant into making confessions or incriminating statements. All of the statements made by the defendant on July 7, 2005, and March 6, 2008, were voluntary.

I.     **Facts**

The transcript of the evidence presented at the suppression hearing [Doc. No. 47] establishes the following facts.

   A.     **Polygraph Examination On July 7, 2005**

Defendant Finfrock voluntarily agreed to meet with FBI agents Paul Cowley and James Hoppe to take a polygraph examination on July 7, 2005, at the Michigan State Police Post. Defendant indicated that she wished to cooperate with the FBI in the ongoing investigation into the death of Daniel Finfrock. Defendant was accompanied by her mother, her stepfather, and Patricia Allard, a Victim Advocate from the Sault Ste. Marie Tribe of Chippewa Indians. The polygraph examination/interview lasted a total of five and one-half hours. It began at about 12:12 p.m. and ended at approximately 5:45 p.m.

Although defendant Finfrock was not under arrest and not in custody, the FBI agents took the precaution of advising the defendant of her *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant made a knowing and voluntary waiver of her *Miranda* rights by signing a written waiver. Defendant Finfrock was further advised in writing that the polygraph examination was being administered in connection with the death of Daniel Finfrock. Defendant knew the subject and purpose of the polygraph examination and interview.

Defendant was advised that she had the right to refuse to take the polygraph examination, she could stop the test at any time, and she had the right to refuse to answer questions. Defendant signed a form consenting to the polygraph examination. Defendant said she wanted to take the polygraph examination despite being advised by her attorney not to do so. At no time did the defendant request to take a break to consult with her attorney or to have her attorney present.

The polygraph examination was administered by FBI Agent Hoppe in a relatively small (approximately six feet by eight feet), sound-proof room which could comfortably accommodate Hoppe, the defendant, and the polygraph equipment. It began with a pretest interview that took approximately two hours. Because Agent Hoppe had not previously participated in the investigation of the case, it was necessary for him to become acquainted with the defendant and learn more about the defendant's "story" or version of events. During the pretest interview, Hoppe obtained biographical information from the defendant and the circumstances of Daniel Finfrock's death were discussed.

The first polygraph examination commenced at about 2:30 p.m. It began with a test to make certain the equipment was operating properly. The first set of questions was asked of the defendant from 2:37 to 3:01 p.m. Hoppe left the room to score the first chart and the defendant remained in the room alone. When Hoppe returned to the room, he talked with the defendant for approximately thirty minutes and formulated a second set of questions which he typed into his laptop computer. Hoppe asked the second set of questions beginning at 3:50 p.m. and ending a little after 4:00 p.m. Hoppe then left the room to score the second chart. At about 4:30 p.m., Hoppe went back into the room to further interview the defendant and discuss the polygraph results. Hoppe then interviewed and questioned the defendant for one hour from 4:30 p.m. to 5:45 p.m.

Defendant did not leave the room during breaks because she was attached to the polygraph machine with a blood pressure monitor. Overall the tone of polygraph examination and interview was friendly between the defendant and the FBI Agents. After the second set of questions, Hoppe told the defendant that Hoppe believed she was not being truthful. At this point, there was a tense moment when voices were slightly raised and the atmosphere became less cordial between Hoppe

and the defendant. Defendant requested to be taken off the polygraph machine and Hoppe promptly complied with her request. Defendant exercised her right to stop the interview and exited the room at about 5:45 p.m.

Defendant confessed to shoving the victim, Daniel Finfrock, hard while he was in bed just prior to taking him to the hospital. At no time during the polygraph examination and interview did the FBI Agents tell the defendant that she was under arrest or that she was not free to leave. At no time did the defendant express any concern to the FBI Agents that she was feeling intimidated or threatened by them. There is no evidence that FBI Agents Cowley and Hoppe ever yelled or screamed at the defendant, or that they used any improper tactics to intimidate and coerce the defendant to confess and make incriminating statements against her will. The FBI Agents complied with all requests by the defendant for food and drink, and to take a break. Defendant was provided with water or a soda and a candy bar. At no time did the defendant say that she was tired, exhausted, or suffered from a lack of sleep. Defendant never indicated that she needed any medication.

Victim Advocate Patricia Allard testified to the following. Allard was present in a waiting area or lobby at the state police post throughout the entire polygraph examination. Allard never heard any yelling or screaming. When defendant Finfrock exited the interview room, she did not say anything to Allard about being deprived of food or water. Allard did not hear the defendant make any complaint about being deprived of food or water, or express any displeasure about the way in which the FBI agent conducted the polygraph examination and interview. Defendant Finfrock did not say anything to indicate that she had been screamed at or berated, or that her will had been overborne in compelling her to make any statements. Defendant did not say anything to indicate that she had been coerced or intimidated into making a confession against her will. Allard says that the

defendant was merely disappointed with the results of the polygraph examination.

### B. Interview In Automobile On March 6, 2008

On March 6, 2008, FBI Special Agents Paul Cowley and Jay Johnston approached the defendant at her place of employment. The FBI Agents informed the defendant that she was free to go, she was not under arrest, and she did not have to speak with them or answer any questions if she did not want to do so. Defendant readily gave her voluntary consent to be interviewed. Defendant entered an FBI automobile and they drove a couple of blocks away to an empty parking lot to conduct the interview. The FBI Agents did this to spare the defendant any embarrassment at her place of work and to protect her privacy. Because the defendant was not under arrest and was not in custody, the FBI Agents did not advise the defendant of her *Miranda* rights.

The interview lasted approximately one and one-half hours. FBI Agents Cowley and Johnston did not yell or scream at the defendant, did not threaten the defendant with physical harm, and did not threaten to arrest the defendant. Agents Cowley and Johnston did not use any improper tactics to berate, intimidate, and coerce the defendant into making a confession or incriminating statements against her will. Defendant never asked to stop the interview, and she did not request any breaks to obtain food or water or use the bathroom. Defendant did not indicate that she had been deprived of sleep or was in need of any medication. At the conclusion of the interview, the FBI Agents transported the defendant back to her place of employment.

## II. Defendant's Statements Were Voluntary

The Court reviews the voluntariness of the defendant's statements under 18 U.S.C. § 3501. As used in § 3501, the term "confession" means "any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." 18 U.S.C. § 3501(e).

Pursuant to 18 U.S.C. § 3501(a) a defendant's confession shall be admissible in evidence if it is voluntarily given. Before a confession is received in evidence, the trial judge is required to determine any issues as to its voluntariness. "If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." 18 U.S.C. § 3501(a).

18 U.S.C. § 3501(b) provides:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.
>
> The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

When a defendant claims that a confession was coerced by law enforcement officers, the government bears the burden of proving by a preponderance of the evidence that the confession was voluntary. *United States v. Hunter*, 332 Fed. Appx. 285, 289 (6th Cir. 2009); *United States v. Ostrander*, 411 F.3d 684, 696 (6th Cir. 2005); *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003); *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

There is no bright-line rule for determining whether a suspect's confession or incriminating

7

statement was voluntarily given. Voluntariness is determined by reviewing the totality of the facts and circumstances in which the confession was made to law enforcement officers. *United States v. Rutherford*, 555 F.3d 190, 195 (6th Cir. 2009); *Hunter*, 332 Fed. Appx. at 288-89; *Johnson*, 351 F.3d at 260. The circumstances to be considered include the defendant's age, level of education and intelligence, physical condition and emotional state at the time of the confession, awareness of her legal rights, whether she was advised of her *Miranda* rights, the length of questioning, the use of physical punishment, and the deprivation of food, water, sleep, or other creature comforts. *Jackson v. McKee*, 525 F.3d 430, 433-34 (6th Cir. 2008); *Ostrander*, 411 F.3d at 696; *Hunter*, 332 Fed. Appx. at 289; *Mahan*, 190 F.3d at 423; *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992).

To establish that a confession was involuntary due to police coercion, the Sixth Circuit requires three elements: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the confession or incriminating statement. *Rutherford*, 555 F.3d at 195; *Ostrander*, 411 F.3d at 696; *Hunter*, 332 Fed. Appx. at 289; *Johnson*, 351 F.3d at 260; *Mahan*, 190 F.3d at 422; *McCall v. Dutton*, 1863 F.2d 454, 459 (6th Cir. 1988).

The Court has reviewed the entire record *de novo* including all evidence presented at the suppression hearing. The Court has considered the totality of the facts and circumstances, and the relevant factors under 18 U.S.C. § 3501 and the applicable Sixth Circuit precedent. The Court finds the government has met its burden of proving by a preponderance of the evidence that the oral statements made by defendant Finfrock to the FBI Agents on July 7, 2005, and March 6, 2008, were voluntary and not coerced.

The threshold issue and the first element of the Sixth Circuit's test is whether the conduct

of the FBI agents was objectively coercive. Proof that a defendant is merely emotional or confused does not, by itself, constitute police coercion and will not render a confession involuntary. *McCall*, 1863 F.2d at 460. The Court finds that the FBI agents did not engage in objectively coercive conduct during the interviews on July 7, 2005, and March 6, 2008. The FBI agents did not force a confession from defendant Finfrock against her will by means of coercive activity.

Furthermore, the evidence in the record falls far short of proving the second and third elements of the Sixth Circuit's test. Defendant Finfrock did not testify and she offered no evidence at the suppression hearing. Based on the evidence presented at the suppression hearing, the Court finds the FBI agents did not engage in any coercive conduct that was sufficient to overbear the defendant's will and render her statements involuntary. There is no evidence to establish that the alleged misconduct by the FBI agents was the crucial motivating factor in the defendant's decision to offer her confession and make incriminating statements.

Having presented no evidence at the suppression hearing concerning her state of mind and her intent or thought process, defendant Frinfrock asks the Court to speculate that the conduct of the FBI agents must have overborne her will and been the crucial factor that motivated her to confess. Defendant asserts that the conduct of the FBI Agents on July 7, 2005, would have caused her to "feel trapped," restrained by the polygraph equipment, and coerced into making the statements. In the absence of probative evidence to support the defendant's position concerning her state of mind, intentions, and thought process, the Court declines to engage in such conjecture and speculation.

The test for voluntariness is not a but-for test. The Court does not ask wether a confession would have been made by defendant Finfrock in the absence of interrogation by the FBI Agents. Few criminal suspects feel impelled to confess to the police purely of their own accord without any

9

questioning at all. It can almost always be said that police interrogation caused a suspect's confession. *United States v. Miller*, 984 F.2d 1028, 1032 (9th Cir. 1993); *Miller v. Fenton*, 796 F.2d 598, 604-05 (3rd Cir. 1986); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973). ("very few people give incriminating statements in the absence of official action of some kind").

It was not improper for FBI Agent Hoppe to inform defendant Finfrock that in his opinion the defendant was not being truthful during the polygraph examination. Nor was it improper for the Agent Hoppe to resume questioning the defendant after the polygraph examination had been completed. *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir. 1993).

In her objections to the report and recommendation [Doc. No. 36], defendant argues the following facts demonstrate that her statements made on July 7, 2005, were coerced and involuntary: (1) the polygraph examination and interrogation lasted from 12:12 p.m. until shortly before 6:00 p.m.; (2) during this period of time the defendant did not leave the small room where the polygraph examination was performed; and (3) it was not until near the end of the interview that the defendant was provided with a candy bar and soda by the FBI Agents.

This argument is not persuasive. Based on the totality of the facts and circumstances, the Court finds the government has proved by a preponderance of the evidence that the statements made by defendant Finfrock on July 7, 2005, were voluntary and not coerced. The length of time, five and one-half hours, is not so extraordinary as to be *per se* coercive. Although the polygraph examination and interview on July 7, 2005, lasted a total of five and one-half hours, it was not a prolonged, continuous, and unremitting interrogation without any breaks. There were several breaks when the FBI Agents were out of the interview room during which the defendant was left alone with time to think, rest, and compose herself.

There is no evidence that defendant Finfrock was tired or suffering from fatigue due to the length of time involved. Defendant knew she had a right to take a break or terminate the interview and leave the room at any time but she chose not to exercise that right until after she was told the results of the polygraph examination indicated she was not being truthful. There is no evidence that the interview room was so exceptionally small and uncomfortable that it was an inherently coercive environment. Whenever the defendant requested food and drink, the FBI Agents complied with her requests. There is no evidence showing that the FBI Agents coerced the defendant into making a confession against her will by depriving her of food and drink. The FBI Agents did not ignore or refuse to comply with any requests by the defendant for food and drink or to take a break.

Defendant next argues the following facts demonstrate that her statements made on March 6, 2008, were coerced and involuntary: (1) the interview lasted approximately one and one-half hours; (2) during the time that the defendant was being interviewed inside the FBI automobile, there were no breaks and she was not provided with food or drink; and (3) the defendant was driven to an isolated area away from her place of employment, without her winter clothing, and without means of return transportation except from the FBI Agents.

This argument fails. The relatively short length of time involved, one and one-half hours, is not coercive. There is no evidence that defendant Finfrock was tired or suffering from fatigue due to the length of the interview. Defendant knew she had the right to terminate the interview and stop answering questions at any time but she chose not to exercise that right. There is no evidence that the defendant requested a break, or requested food and drink on March 6, 2008. There is no evidence showing that the FBI Agents coerced the defendant into making a confession against her will by depriving her of a break or food and drink. In the absence of a specific request by the

11

defendant, there was no reason for the FBI Agents to take a break in the interview or to provide her with food and drink.

Although the defendant contends that she was transported to an isolated area, the evidence establishes that the FBI Agents only drove her a couple of city blocks away from her place of employment to an empty parking lot in a public place. The conduct of the FBI Agents was reasonable and not coercive. The FBI Agents did this to spare the defendant embarrassment in front of her co-workers and to protect her privacy. The FBI Agents were ready and willing to promptly return the defendant to her place of employment whenever she wanted. At no time during did the defendant make a request to terminate the interview and ask be returned to her place of employment. The Court rejects the defendant's contention that she was trapped in the FBI automobile and was unable to exit the automobile to return to her job which was only a couple of blocks away from the place where the interview occurred. Based on the totality of the facts and circumstances, the Court finds the government has proved by a preponderance of the evidence that the statements made by defendant Finfrock during the interview on March 6, 2008, were voluntary and not coerced.

Pursuant to 18 U.S.C. § 3501(a) and (b) the Court determines that the confessions and incriminating statements in question were voluntarily made by defendant Finfrock. Her voluntary statements shall be admissible in evidence at trial. The jury shall be permitted to hear relevant evidence on the issue of voluntariness and the Court will instruct the jury to give such weight to the defendant's statements as the jury feels it deserves under all the circumstances.

### III. Defendant Not Under Arrest or In Custody When Voluntary Statements Were Made On July 7, 2005

Defendant Finfrock argues that even if the Court finds her statements were voluntary, her

statements should be suppressed on the alternative theory that there has been a violation of her right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure. Defendant contends the polygraph examination and interview on July 7, 2005, was so lengthy that it rises to the level of an illegal arrest and unreasonable seizure. Defendant argues that she was in custody on July 7, 2005. She cites *Brown v. Illinois*, 422 U.S. 590, 600 (1975), for the proposition that compulsion is inherent in custodial situations. A confession obtained as a result of the exploitation of an illegal arrest may not be used against a criminal defendant. *Brown*, 422 U.S. at 603; *United States v. Shaw*, 464 F.3d 615, 626 (6th Cir. 2006).

This argument fails. The Court concludes that the defendant was not under arrest or in custody during her polygraph examination and interview with the FBI Agents on July 7, 2005. To decide whether defendant Finfrock was subject to custodial interrogation, the Court has reviewed the totality of the facts to determine how an objectively reasonable person in the defendant's same position would have understood the situation. *United States v. Swanson*, 341 F.3d 524, 528-29 (6th Cir. 2003); *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998). The ultimate inquiry is whether there was a formal arrest or restraint on the defendant's freedom of movement of the degree associated with a formal arrest. *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009); *Swanson*, 341 F.3d at 529.

This inquiry is guided by consideration of several factors: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length and manner of the questioning; and (4) other indicia of custody such as whether the defendant was informed at the time that the questioning was voluntary or that the defendant was free to leave or to request the officers to leave; whether the defendant possessed unrestrained freedom of movement during the questioning;

13

and whether the defendant initiated contact with the police or acquiesced to requests by the police to answer questions. *Panak*, 552 F.3d at 465; *Swanson*, 341 F.3d at 529; *Crossley*, 224 F.3d at 861; *Salvo*, 133 F.3d at 950.

Measured by these factors and based on the totality of the facts, the polygraph examination and interview with the FBI Agents on July 7, 2005, did not rise to the level of a custodial interrogation. Defendant was not under formal arrest. The degree of restraint exercised over her freedom of movement by the FBI Agents never reached the level associated with a formal arrest or a coercive context tantamount to custody. *Swanson*, 341 F.3d at 529; *Salvo*, 133 F.3d at 953.

A reasonable person in the defendant's position would have felt free to terminate the polygraph examination/interview and leave. *Swanson*, 341 F.3d at 529; *United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000). Defendant was advised by the FBI Agents that she was not under arrest, she had the right to refuse to take the polygraph examination, she could stop the test at any time, and she had the right to refuse to answer questions. When the defendant was informed by Agent Hoppe that the results of the polygraph examination showed she was not being truthful, she did exercise her right to terminate the polygraph examination/interview and leave.

The length and manner of the questioning on July 7, 2005, were not coercive and did not restrain the defendant in custody. Defendant Finfrock voluntarily agreed to cooperate with the FBI investigation and she consented to come to the Michigan State Police Post to take the polygraph examination. The FBI Agents did not detain or physically restrain her against her will. Defendant Finfrock was informed the questioning was voluntary, and she was free to terminate the polygraph examination/interview and leave at any time she so desired. All of these facts do not amount to a custodial interrogation.

Furthermore, there is no violation of the defendant's Fifth Amendment right against self-incrimination. Even if we assume *arguendo* that defendant Finfrock was in custody on July 7, 2005, the FBI agents took the precaution of advising her of her *Miranda* rights. Defendant Finfrock made a knowing and voluntary waiver of her *Miranda* rights.

## IV. Statements On March 6, 2008, Not Fruit Of Poisonous Tree

Finally, defendant argues that the statements she made to the FBI agents on March 6, 2008, must be suppressed as "fruit of the poisonous tree" citing *Wong Sun v. United States*, 371 U.S. 471, 486 (1963) and *United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008). The defendant's theory is that if her statements to the FBI agents during the July 7, 2005, polygraph examination/interview are suppressed on the ground that they were involuntary or were the product of a custodial interrogation in violation of the Fourth Amendment, then her subsequent statements made to the FBI agents on March 6, 2008, must be suppressed as "fruit of the poisonous tree." Defendant contends there is no evidence of an intervening independent act of free will on her part that would make her statements given on March 6, 2008, voluntary and remove the taint of the alleged illegality of the statements she made on July 7, 2005.

The defendant's fruit-of-the-poisonous-tree argument fails. The Court has determined that the statements made by defendant Finfrock on July 7, 2005, were voluntary and were not coerced by the FBI agents. The Court has also determined that defendant Finfrock was not under arrest or in custody when she made her statements on July 7, 2005, and there has been no violation of her Forth Amendment right to be free from unreasonable seizure. Consequently, the fruit-of-the-poisonous-tree doctrine cannot be applied here to suppress the defendant's statements made on March 6, 2008, when her earlier statements to the FBI agents on July 7, 2005, were voluntary and

are not being suppressed for any reason.

## V.  Conclusion

The defendant's objections [Doc. No. 36] to the report and recommendation are without merit and are **DENIED**.  Pursuant to 28 U.S.C. § 636(b)(1)(B) the Court **ACCEPTS and ADOPTS** the Magistrate Judge's report and recommendation. [Doc. No. 35].  The defendant's motions to suppress the statements she made to the FBI agents during the interviews on July 7, 2005, and March 6, 2008 [Doc. Nos. 21, 26] are **DENIED**.

SO ORDERED.

Date: February 25, 2010.


   /s/ R. Allan Edgar
   R. ALLAN EDGAR
   UNITED STATES DISTRICT JUDGE